United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 30, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30368

_____

PHYLLIS E. HOLLINGSHEAD; MICHAEL PATTERSON;
GERALD WAYNE PATTERSON, JR.,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court for
the Western District of Louisiana
(USDC No. 5:02-CV-1373)
_____

Before REAVLEY, DeMOSS and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:[*]

In this medical malpractice case concerning the unfortunate death of Mr.

Patterson, Plaintiffs appeal the judgment in favor of the United States. We affirm for the

following reasons:

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

1. We review the district court's findings of fact for clear error and its legal conclusions de novo. Joslyn Mfg. Co. v. Koppers Co., 40 F.3d 750, 753 (5th Cir. 1994).

2. The parties agree that Louisiana substantive law governs. We believe the district court correctly applied Louisiana law. The court understood that in a medical malpractice case involving the death of a patient, Louisiana law does not require proof that the patient would have survived, but instead imposes the lesser standard of proving that "there would have been a chance of survival, and that the patient was denied this chance of survival because of the defendant's negligence." Smith v. State, 523 So.2d 815, 820 (La. 1988) (internal quotation mark omitted). The district court recited the Smith standard and we cannot agree with plaintiffs that the court ignored this standard and legally erred in imposing a greater standard of proof of causation. Furthermore, if the court did err in applying the law governing causation, this error was harmless since the court correctly applied the law regarding the separate essential element of negligence, and did not clearly err in finding that the government was not negligent.

3. Plaintiffs, Patterson's survivors, do not persuade us that the district court legally erred in failing to distinguish between doctor and hospital negligence. In its memorandum opinion the district court detailed the treatment of Patterson by the treating physicians and the hospital staff, and concluded that "the VA medical staff was not negligent in treating Patterson's coagulopathy." We do not believe that the district court erroneously thought that Louisiana law of medical malpractice is limited to physician negligence or that Plaintiffs' claims in this particular case were so limited.

2

4.  On appeal Plaintiffs focus on the coagulopathy that led to Patterson's death. We have reviewed the record and cannot say that the district court clearly erred in rejecting their negligence claim relating to the treatment of this condition. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

5.  The parties presented conflicting evidence on the issue of whether the treatment of Patterson's coagulopathy was negligent or denied him a chance of survival. The death of a patient undergoing a colonoscopy is rare. Patterson's coagulopathy was diagnosed. The primary treatment for this condition is fresh frozen plasma (ffp). Patterson received ffp and other fluids to treat his coagulopathy. Plaintiffs contend that Patterson did not receive a sufficient quantity of ffp to stem the bleeding caused by the coagulopathy.

6.  Plaintiffs point to evidence that a treating physician, Dr. Marr, had ordered four units of ffp and the hospital staff had only delivered one unit. Plaintiffs also point to evidence that more than one unit can in theory be administered to a patient at the same time. There was however evidence that standard procedure is to thaw and deliver one or two units of plasma at a time, that Patterson's development of coagulopathy was unusually rapid, and that Patterson died before sufficient ffp could be administered. Both sides presented expert testimony on the issues of negligence and causation. The district court found the testimony of Drs. Cole and Marr more credible than the testimony of Dr.

Beck.  Given the conflicting evidence and our standard of review, we cannot say that the

evidence was so overwhelming in Plaintiffs' favor that the district court clearly erred in

finding that "the VA medical staff had no indication that Patterson's coagulopathy would

develop so rapidly," that the staff "followed the generally accepted protocol for treating

coagulopathy," and that ultimately it was not negligent treating this condition.

AFFIRMED.